# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:17CR69 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| TYRELL L. MOSS, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

On July 13, 2018, defendant Tyrell L. Moss ("Moss") moved the Court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 22 ["§ 2255 Mot."].) On August 6, 2018, Moss moved to amend his petition to include a claim that his trial counsel failed to file a notice of appeal after allegedly being requested to do so. (Doc. No. 23 ["Mot. to Amend"].) The Court granted Moss' motion and afforded him leave to amend. (Doc. No. 27 (Memorandum Opinion); *see* Doc. No. 28 (Amended § 2255 motion ["Am. § 2255 Mot."]).) The government opposes the motion, as amended. (Doc. No. 32 ["Opp'n"].) On December 4, 2019, the Court conducted an evidentiary hearing on the issue raised in the amendment.[1] At the conclusion of the hearing, the Court took the matter under advisement. For the reasons that follow, Moss' motion, as amended, to vacate his sentence is DENIED.

## I. BACKGROUND

On May 1, 2017, Moss entered a plea of guilty to the offense charged in the indictment,

---

[1] Prior to the hearing, the Court appointed Moss counsel. (*See* Sept. 11, 2019 CJA(20) App. of Thomas E. Conway).

pursuant to the terms of a plea agreement.[2] (Doc. No. 15.) The plea agreement stipulated that Moss' offense level would be 27 following a three-level reduction for acceptance of responsibility. (*Id.* ¶¶ 16, 17.) There was no agreement on Moss' Criminal History Category. (*Id.* ¶ 18.) The plea agreement also contained a waiver of most rights to challenge this Court's judgment on appeal and on post-conviction review. (*Id.* ¶ 19.)

At the outset of the August 11, 2017 sentencing hearing, the Court discussed with Moss and counsel an error that appeared in the plea agreement that incorrectly identified a maximum period of supervised release of 3 years when in fact the applicable period was a minimum of 5 years up to life imprisonment. (Doc. No. 30 (Transcript from Sentencing Hearing ["TR"]) at 165[3]; *see* Plea Agreement ¶ 2.) After ensuring that Moss had been afforded sufficient time to discuss the matter with his counsel, the Court asked Moss if, given the error, he wished to withdraw his guilty plea. Moss advised that he wished to reaffirm his plea and proceed with sentencing. (TR at 168–69.)

In arriving at his sentence, the Court began with a base offense level of 24, to which a two-level increase was added because the offense involved the use of a computer, another two-levels was added because the offense involved the commission of a sex act, and a final two-level increase was imposed because of Moss' role in the offense, making the adjusted offense level 30. The Court also applied a two-level reduction for Moss' acceptance of responsibility and granted the government's motion for the application of an additional one-level reduction. (TR at 170; *see*

---

[2] Pursuant to the plea agreement, Moss entered a guilty pleas to one count of Interstate Transportation for Commercial Sex, in violation of 18 U.S.C. §§ 2421 and 2. (*See* Plea Agreement.) In the plea agreement, Moss admitted that between September and October 2016, he transported a minor from Washington to Ohio to engage in prostitution. (*Id.* ¶ 21.)

[3] All page numbers refer to the page identification number generated by the Court's electronic docketing system.

Plea Agreement ¶ 16.) Consistent with the plea agreement and the information contained in the presentence report ("PSR"), the Court arrived at a total offense level of 27. (*See* Doc. No. 17 (PSR).) With a criminal history score of four, the Court determined that Moss had a Criminal History Category of III.[4] (*Id.*; *see* Plea Agreement ¶¶ 16, 17; PSR ¶¶ 29-40.) The advisory guideline range of imprisonment for an offense level of 27 and a Criminal History Category III was 87 to 108 months. (TR at 170; PSR ¶ 88.) The Court sentenced Moss to a within-guidelines term of imprisonment of 96 months. (Doc. No. 21 (Judgment).)

Moss did not take a direct appeal from the Judgment. Instead, Moss filed the present § 2255 motion, alleging that trial counsel erred by failing to object to the criminal history score assigned by the Court at sentencing. (*See* § 2255 Mot.) In support of his amended petition, Moss filed an affidavit wherein he averred that he was further prejudiced because:

> counsel failed to file a notice of appeal after the sentencing, at my request, notwithstanding my plea waiver, so that I could argue on appeal whether counsel was ineffective during the plea negotiations and his subsequent advice to have me waive my appellate rights an inability to appeal any adverse sentencing determinations by the Court.

(Am. § 2255 Mot., Affidavit of Tyrell L. Moss, at 158, ¶ 11.) As part of his prayer for relief, Moss requested an evidentiary hearing on the question of whether trial counsel failed to file a notice of appeal upon his request. (Am. § 2255 Mot. at 156.)

The Court stayed the matter pending the outcome of *Garza v. Idaho*, wherein the Supreme Court had granted certiorari to decide whether ineffective assistance of counsel exists

---

[4] As to the criminal history score, defense counsel raised the fact that several of Moss' prior convictions were misdemeanors. (TR at 171.)

when a criminal defendant instructs their attorney to file an appeal, but the attorney declines to do so because the defendant's plea agreement contains an appellate waiver. The Supreme Court ultimately answered the question in the affirmative, finding that the presumption of prejudice, recognized in *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000), that attaches when an attorney's deficient performance costs a defendant the right to appeal, "applies regardless of whether the defendant has signed an appeal waiver." *Garza v. Idaho*, -- U.S. --, 139 S. Ct. 738, 742, 203 L. Ed. 2d 77 (2019).

## II. EVIDENTIARY HEARING

Two witnesses testified at the December 4, 2019 evidentiary hearing—John Greven, Moss' trial counsel, and Moss. The undersigned presided over the hearing and had the opportunity to closely observe the witnesses as they testified. Attorney Greven testified that he has served as a criminal defense attorney for approximately 25 years. He candidly admitted that he had no independent recollection of the conversation he had with Moss immediately following the imposition of sentence, but indicated that it is his practice to meet with his client (either in the courtroom or in the holding cell) immediately after sentence is imposed, and discuss his client's appellate rights and whether those rights were restricted by any plea agreement. He also reviews with his client any possible issues for appeal. Greven testified emphatically that, had Moss requested that he file a notice of appeal, Greven would have done so. Greven represented that he had no further contact with Moss after the post-sentencing conversation would have taken place, and he confirmed that he exchanged no subsequent correspondence with Moss.

Counsel agreed that, in considering the plea agreement, he and his client were concerned about Moss' criminal history. Because Moss had prior convictions in the State of Washington,

Greven reached out to the Federal Public Defender's Office ("FPD") in Seattle, and the FPD provided counsel with information and documents pertaining to these prior proceedings. The FPD even provided a calculation of Moss' prior criminal history under the guidelines, and this calculation comported with the PSR. After he reviewed the materials from Seattle, counsel was confident as to the criminal history calculation in the PSR. According to Greven, he would have communicated this information to his client and discussed with him the ramifications of entering into the plea agreement with the government.

Moss also testified at the hearing. He admitted that Greven visited him in the detention center to discuss his case four or five times, and that counsel met with him after the initial and revised PSRs were filed. Moss indicated that he expressed to counsel "major concerns" regarding any plea agreement, given his anticipated criminal history category. According to Moss, counsel stated that Moss would receive a sentence of no more than 5 years. Specifically, he recalls that he and Greven discussed a likely 60 month sentence growing out of a Criminal History Category II and an initial base offense level of 24. When the PSR recommended a much higher sentence, he raised with counsel a concern about proceeding with a guilty plea, to which counsel encouraged him to not "worry about the numbers." Moss insisted that Greven explained that there would be an opportunity to object.[5]

Notwithstanding the above testimony, Moss conceded that the stipulation in the plea agreement as to what the parties agreed is inconsistent with what he now claims his attorney told him.

---

[5] Moss indicated that counsel advised him that he would object to any enhancements and "somehow it was going to fall within [a range that capped off at no more than 60 months]."

Moss further testified that, after the Court's sentence was imposed, he only had a "brief second" to speak with counsel. He stated that, in that moment, he informed Greven that he had a problem with an 8 year sentence and that he wanted to appeal. According to Moss, his counsel's response was, "I'll look into it." It was only later that Moss learned that a notice of appeal was never filed, and he was instructed by another inmate to file a motion to vacate. When asked why he did not file anything with the Sixth Circuit after he discovered that a notice of appeal had not been filed, he responded that he did not know. He also failed to offer any explanation as to why he did not include his counsel's alleged failure to file a notice of appeal in his original motion to vacate but waited, instead, to included it in his request to amend his petition.

### III. LAW AND DISCUSSION

A federal prisoner may attack the validity of his sentence by filing a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 in the district court where he was sentenced. Section 2255 sets forth four grounds upon which a federal prisoner may state a claim for relief: "[1] the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] [the sentence] is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

To prevail under § 2255, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)). "Relief is warranted only where a petitioner has shown 'a fundamental defect which inherently results in a

complete miscarriage of justice.'" *Id.* (quoting *Davis v. United States*, 417 U.S. 333, 346, 94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974)).

The two issues Moss raises in his amended § 2255 motion invoke a defendant's right to receive effective assistance of counsel. Claims of ineffective assistance of counsel are properly raised in the first instance in a motion to vacate pursuant to § 2255, even if the petitioner did not seek a direct review of his judgment. *Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003).

Moss' ineffective assistance of counsel claims are governed by the familiar standard established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under this standard, a petitioner must demonstrate that counsel's performance was deficient, and that this deficient performance caused prejudice to the petitioner. *Strickland*, 466 U.S. at 687. To demonstrate that counsel's performance was deficient, a petitioner must show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment." *Id.* To establish that the deficient performance caused prejudice to the petitioner, he must show that the counsel's errors were so serious that the petitioner was deprived a fair trial. *Id.* Essentially, a petitioner must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

"The reviewing court's scrutiny of counsel's performance is highly deferential," and "'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 689, 690), *overruled on other*

*grounds by In re Abdur' Rahman*, 392 F.3d 174 (6th Cir. 2004). A petitioner's disagreements with the strategies or tactics of counsel are not enough to support an ineffective assistance of counsel claim. *Strickland* at 689; *see McQueen*, 99 F.3d at 1311 ("[T]rial counsel's tactical decisions are particularly difficult to attack, and a defendant's challenge to such decisions must overcome a presumption that the challenged action might be considered sound trial strategy.") (quotation marks and citations omitted).

A criminal defendant does not have a constitutional right to demand that his trial counsel raise every possible issue. A failure to raise a claim will not amount to ineffectiveness so long as counsel "exercise[d] reasonable professional judgment." *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). In fact, it is well settled that counsel cannot be ineffective for refusing to raise baseless arguments. *See Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (finding that counsel was not constitutionally ineffective for not pursuing meritless claims); *Krist v. Foltz*, 804 F.2d 944, 946 (6th Cir. 1986) (noting that "[a]n attorney is not required to present a baseless defense or to create one that does not exist").

A.      **Failure to File a Notice of Appeal**

As previously discussed, Moss claims that he received ineffective assistance of counsel, in part, because his counsel failed to file an appeal following sentencing. Failure to file an appeal upon a defendant's express request is *per se* ineffective assistance of counsel. *Garza*, 139 S. Ct. at 746-47 (citing *Flores-Ortega*, 528 U.S. at 477); *see Campbell v. United States*, 686 F.3d 353, 360 (6th Cir. 2012). Therefore, if the Court were to determine that Moss explicitly requested that his trial counsel file a notice of appeal and his attorney failed to do so, he would be entitled to pursue a delayed appeal.

The parties agree that this issue comes down to a question of credibility. The Court resolves that question in favor of the government, finding that Moss did not request that his trial attorney file an appeal. In so ruling, the Court credits Greven's testimony that Moss did not ask him to file a notice of appeal because, had Moss requested that he file a notice of appeal, he would have done so as he would with any client who makes a similar request. He testified credibly that, given the concern regarding Moss' prior out-of-state convictions, he sought and obtained information regarding those convictions from the Seattle FPD that ultimately confirmed the prior history calculation contained in the PSR was accurate before discussing the matter with Moss. His testimony is also consistent with the record as a whole, and, in particular, with the terms of the plea agreement and the fact that Moss never raised a concern at the sentencing hearing regarding the calculation of his criminal history.

In contrast, the Court does not credit Moss' testimony. It was clear from his demeanor on the witness stand that he was not testifying in a truthful fashion, but was, instead, offering self-serving vague statements that were contradicted by the record and the facts of the case. For example, he testified that it was his understanding that his attorney would file objections to the PSR in an effort to bring his criminal history category down to a category II, and that this reduction would "somehow" yield a 60-month sentence. Yet, even with a criminal history category of II, Moss' advisory guideline range would have been 78–97 months; well above the 60 months he contends he was guaranteed by counsel and still encompassed the 96-month sentence Moss received. Even if the Court were to overlook Moss' prior conviction for making false statements as negatively impacting his credibility, the Court would find that that his

testimony simply did not ring true.[6] That Moss elected to continue with sentencing when he was afforded an opportunity to withdraw his plea—knowing the recommended criminal history calculation in the PSR—serves as further evidence that Moss was not "shocked" and "surprised," as he now suggests, when he received his sentence.

Having determined that Moss' testimony was incredible and that Moss never requested that his trial counsel file an appeal from his conviction and sentence, the Court finds that Moss has failed to meet his burden of demonstrating that he received ineffective assistance from his trial counsel relative to this mater. He is, therefore, not entitled to relief in the form of a delayed appeal.

B.      **Criminal History Calculation**

In a related argument, Moss also claims that his counsel was ineffective for failing to object "to an incorrect criminal history score/category." (Mot. at 121.) Specifically, he maintains that trial counsel should have objected to the Court assessing one point for his 2014 false statement/driving under the influence conviction because the sentence was entirely suspended. (Doc. No. 22-1 (Memorandum in Support) at 133.) He also claims that trial counsel should have objected to the assessment of criminal history points for the previously discussed 2014 conviction and 2009 attempted cocaine possession conviction because these convictions are exempted from the table of offenses listed in U.S.S.G. § 4A1.2(c)(1). (*Id*. at 132.) Neither argument has merit.

---

[6] As noted at sentencing, the record reflects that in 2014 Moss was convicted in the State of Washington of making false statements to law enforcement and driving under the influence. (TR at 170-71; PSR at 83.)

Under U.S.S.G. § 4A1.1(c), the sentencing court must "[a]dd 1 [criminal history] point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this subjection." A "prior sentence" is defined under the guidelines as "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*, for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1). With respect to the first issue, "[a] conviction for which the imposition or execution of sentence was totally suspended or stayed shall be counted as a prior sentence under § 4A1.1(c)." U.S.S.G. § 4A1.2(a)(3). Application Note 3 to § 4A1.1 lists the exceptions to the general rule that prior sentences count as one criminal history point. Pertinent to the present motion, criminal history points do not accrue under § 4A1.1(c) for sentences imposed more than 10 years before commission of the instant offense, *see* U.S.S.G. § 4A1.2(e), nor do they accrue for certain specified non-felony offenses unless the sentence for that offense was "a term of probation of more than one year or a term of imprisonment of at least thirty days[,]" *see* U.S.S.G. § 4A1.2(c)(1).

Here, the Court properly determined that Moss' 2009 and 2014 convictions each accrued one criminal history point. Both sentences qualified as "prior sentences" because they resulted in convictions that were separate and apart from the criminal conduct in this case. Neither prior sentence was imposed more than 10 years before the conduct herein, which Moss admitted occurred between September and October 2016. (*See* Plea Agreement ¶ 21.) The fact that these sentences were suspended in whole or in part was irrelevant to whether they accrued criminal history points under § 4A1.1(c). *See* U.S.S.G. § 4A1.2(a)(3).

Equally irrelevant was the fact that the 2009 convictions involved non-felony offenses. Section 4A1.2(c)(1) provides a list of specified non-felony offenses that count toward a

defendant's criminal history score only if "the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days [or] the prior sentence was similar to the instant offense[.]" U.S.S.G. § 4A1.2(c)(1). Drug possession is not one of the enumerated offenses, and, while providing false information to a police officer is one of the specified crimes, the government correctly points out that Moss' 2014 false statement conviction included a conviction for driving under the influence, which the guidelines note is "always counted, without regard to how the offense is classified [and] Paragraphs (1) and (2) of § 4A1.2(c) do not apply." *See* U.S.S.G. § 4A1.2, Application Note 5.

The record is clear that the Court correctly computed Moss' criminal history under the guidelines. Counsel cannot have been ineffective for failing to raise what would have been meritless objections at sentencing.[7] *See Hoffner*, 622 F.3d at 499; *Krist*, 804 F.2d at 946. Accordingly, Moss has failed to demonstrate either prong of the *Strickland* test for ineffectiveness, and his claim fails.

## IV. CONCLUSION

For the foregoing reasons, Moss' motion to vacate, set aside, or correct his sentence, as amended, is DENIED. (*See* Doc. Nos. 22, 28.) Further, the Court CERTIFIES that an appeal

---

[7] As set forth above, trial counsel did advise the Court that the 2014 convictions involved misdemeanor offenses. (TR at171.)

from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

   **IT IS SO ORDERED**.


Dated: February 28, 2020

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**